UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK J. BROOKS,

     Plaintiff,

     v.

TOWN OF WORTHINGTON, et al.,

     Defendants.

Civil Action No. 24-30024-MGM

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT AND DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(Dkt. Nos. 24 & 32)

September 23, 2025

MASTROIANNI, U.S.D.J.

## I.  BACKGROUND

Plaintiff, Mark J. Brooks, proceeding pro se, filed this action in state court against the Town of Worthington ("Worthington"); members of the Worthington Select Board, Charles Rose, Amy Wang, and Stephen T. Smith; Worthington Administrator, Margaret O'Neil; Worthington Highway Superintendent, Albert Nugent III; and former Administrator of the Town of Chester ("Chester"), Katherine Warden (collectively "Defendants"). Plaintiff asserts various claims under Massachusetts and federal law against Defendants, all arising from disputes about maintenance of certain roads during the winter. Plaintiff resides at 148 Lindsey Hill Road in Worthington (the "Worthington Property"), and also owns a property located at 69 Smith Road in Chester (the "Chester Property"). Historically, both Chester and Worthington have closed certain roads or portions of roads during the winter months, rather than keep them clear of snow and ice. The closures have included a portion of Lindsey Hill Road beginning after the driveway to the Worthington Property, a portion of Smith Road

used to access the Chester Property and extending to the Worthington line; and a portion of Patterson Road, the continuation of Smith Road in Worthington. The lack of winter maintenance on those sections of road has been a source of conflict between Plaintiff and the towns for decades. This is one of three cases currently pending in this court related to the long-running dispute.

Plaintiff filed this action in the Superior Court Department of the Massachusetts Trial Court on or about January 22, 2024. Defendants, invoking federal question jurisdiction, removed to this court in early 2024. Plaintiff unsuccessfully sought remand, and Defendants filed a motion to dismiss for failure to state a claim. The court granted Plaintiff additional time to respond to the motion to dismiss. Rather than file an opposition, he sought leave to file an amended complaint. The court granted the motion and found Defendant's motion to dismiss moot. Plaintiff filed his Amended Complaint ("FAC") and Defendants filed a motion to dismiss the FAC. After receiving multiple extensions of time to file his opposition, Plaintiff instead elected to file a motion for leave to file a second amended complaint. He argued his proposed Second Amended Complaint ("SAC") would "cure many deficiencies in the complaint" by including references to a letter from the Massachusetts Office of the Attorney General, adding a reference to the Massachusetts Civil Rights Act, and adding new facts regarding actions taken by the Worthington Selectboard in November 2024. (Mot. for Leave to File Sec. Am. Compl., Dkt. No. 32, 2.) Defendants opposed the motion, arguing the SAC would be futile because it did not remedy shortcomings previously identified in Defendants' pending motion to dismiss. Plaintiff filed a twenty-four-page reply in which he addressed the arguments raised in Defendants' opposition to his motion for leave to file a second amended complaint and those raised in Defendants' pending motion to dismiss. For the reasons explained below, the court will deny Plaintiff's motion for leave to file a second amended complaint. The court will also grant Defendants' motion to dismiss Plaintiff's first amended complaint as to the federal claims and remand the remaining court claims to state court.

## II.    MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading as a matter of course, once, within certain time limits. Consent for a subsequent amended complaint "shall be freely given when justice so requires," but not where the amendment would be futile. *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)" *Id.* Pursuant to that standard, the court must dismiss any counts that fail to "'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). "While a district court is generally limited to considering facts and documents that are part of the complaint, it may also consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice." *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) (internal quotations and alterations omitted). Dismissal is appropriate for any claim if the factual allegations cannot support one or more "material element[s] necessary to sustain recovery under some actionable legal theory." *N.R. by and through S.R. v. Raytheon Co.*, 24 F.4th 740, 746 (1st Cir. 2022) (internal quotations omitted). This includes any claim that is untimely on its face. *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (affirming dismissal "when the pleader's allegations 'leave no doubt that an asserted claim is time-barred,'" as occurred when plaintiff alleged harms caused by discrete actions taken years before the limitations period (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)).

3

III.    **SPECIAL CONSIDERATIONS APPLICABLE TO COMPLAINTS FILED BY PRO SE PLAINTIFFS**

"Our judicial system zealously guards the attempts of pro se litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Recognizing the difficulties pro se plaintiffs face, the courts construe pro se complaints liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Like other plaintiffs, "even a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). Holding all plaintiffs, including pro se plaintiffs, to this standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotations omitted).

IV.    **BACKGROUND**[1]

Plaintiff purchased the Chester Property in 1989 and began residing there. In 1995, the main dwelling on the property was damaged in a fire and Plaintiff moved into a secondary cottage. The Chester Building Commissioner and Board of Health informed Plaintiff in 1996 that the cottage had

---

[1] Consistent with the applicable plausibility standard, the court includes Plaintiff's factual allegations, concerning who did what and when, but generally omits conclusory allegations concerning the legal significance of those actions *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) ("[T]he Court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012))). Factual allegations related to events occurring many years before Plaintiff filed his complaint are largely omitted because any claims based on those events are barred by the applicable, three-year statute of limitations. The court also takes judicial notice of some facts included in the Amended Complaint filed by Plaintiff in *Brooks v. Chester* (24-cv-30023, Dkt. No. 22) and set forth in judicial decisions or Plaintiff's filings in prior state court litigation (24-cv-30023, Dkt. No. 31).

been constructed without the proper permits and took actions to evict Plaintiff from the Chester Property. Plaintiff hired an engineer to assess the septic system and access to potable water. The engineer's report stated the Chester Property had a septic system that met legal requirements (Title V) and access to potable water through a private well. Although Chester ceased efforts to evict Plaintiff from the Chester Property in late 1996, Plaintiff built a house at the Worthington Property in 1997, and the new home became his primary residence.

For many years, during the winter Worthington closed a section of Lindsey Hill Road beginning after the driveway of the Worthington Property. The closure enabled snowmobiles to use Lindsey Hill Road, but Plaintiff found the closure inconvenient. Additionally, Chester was not maintaining a portion of Smith Road in the winter and Worthington was not maintaining a portion of Patterson Road. Those closures made it extremely difficult for Plaintiff to access the Chester Property during the winter. As some point, likely prior to 2002, Plaintiff began requesting the towns keep those three sections of road open in the winter; Plaintiff also began using his own equipment to plow the closed section of Lindsey Hill Road.[2]

Beginning in December 2007, Plaintiff was involved in a series of conflicts with several individuals, including Albert Nugent III, the Worthington Highway Superintendent and a defendant in this case, related to winter snow removal on the "closed" portion of Lindsey Hill Road. In 2016, Plaintiff sought to resolve the situation by filing a petition with the Hampshire Council of Governments ("HCOG"). Nugent sent documentation to HCOG stating that the relevant portion of Lindsey Hill Road was not plowed because it is too steep and too narrow. A representative of HCOG viewed the road and concluded the portion that was not maintained in the winter was no narrower or steeper than the part that was maintained. Following the HCOG proceeding, Worthington committed to widening the disputed portion of Lindsey Hill Road and maintaining it during the winter.

---

[2] Plaintiff has not specified the date, or even year, during which he sent the letter.

Worthington initially increased winter maintenance as agreed, but, in the winter of 2018-2019, Nugent significantly scaled back winter maintenance on the disputed section of Lindsay Hill Road. There was an increase in motor vehicle accidents, and Plaintiff made complaints to the Worthington Selectboard in January and March 2020. After Plaintiff complained, Nugent regraded Lindsey Hill Road in such a way that water began to run down Plaintiff's driveway. In the winter, the new water would freeze into ice on Plaintiff's driveway. Plaintiff used ice melt to create a trench in the ice so that water would run down Lindsay Hill Road, instead of freezing in his driveway. More than three years later, on October 7, 2023, Plaintiff was injured during an altercation with Robert L. Dodge, a friend of Nugent, but not a defendant in this action. For reasons that have not been clearly explained, Plaintiff contends the altercation would not have occurred if Nugent had not previously regraded Lindsey Hill Road.

Separately, between 1989 and 2024, Chester and Worthington also closed sections of Smith Road and Patterson Road close to the Chester Property during the winter months, rather than safely maintain them. Worthington's practice was to close the portion of Patterson Road running from the last safe turnaround for plows to the Chester line. Closing the section of Patterson Road was not the only option available. The town took a different approach on Fisk Road, sending Worthington plow trucks past the last turnaround in the town and having them continue plowing past the town line and then turn around in Chester.

Plaintiff challenged the partial closure of Patterson Road during the winter on several occasions between 1989 and 2021. He was not able to obtain a lasting resolution and continued having difficulties accessing the Chester Property during the winter. Plaintiff also grew dissatisfied with the response he received when he brought issues related to the road closures to the Worthington Selectboard, and on two occasions, he made Open Meeting Law complaints to the Massachusetts Office of the Attorney General.

In April 2, 2019, Plaintiff alleged the Worthington Selectboard's process for approving seasonal road closures violated the Massachusetts Open Meeting Law. Staff in the Office of the Attorney General responded by letter on August 7, 2019. (Aug. 7, 2019 Mass. AG letter, SAC, Ex. D, Dkt. No. 18-8.) The letter explained that Plaintiff had not alleged conduct that violated the Open Meeting Law and the Attorney General would not be taking any action on his allegations that Worthington was violating Mass. Gen. Laws c. 82, § 32A, the statute governing decisions to cease maintaining a public way. *Id.* Plaintiff made a second Open Meeting Law complaint in June 2022. The Attorney General found the Worthington Selectboard had violated the Open Meeting Law by failing to create and approve minutes for their November 9, 2021 meeting and ordered the Selectboard to create and approve minutes for the meeting within 30 days. (Aug. 16, 2022 Mass. AG letter, SAC, Ex. 14, Dkt. No. 18-14.) Plaintiff had also alleged a recording of the meeting had been edited, but the letter explained there was no Open Meeting Law violation because the Open Meeting Law does not require audio recordings be made or handled in a particular manner. (*Id.*)

On October 4, 2021, Plaintiff wrote a letter requesting Worthington plow the disputed section of Patterson Road running from the last turnaround for plow trucks to the Chester line. Margaret O'Neil, in her role as Worthington's administrator, responded to Plaintiff's letter and informed him that there would be a road closure hearing on November 9, 2021. Plaintiff attended the hearing remotely. During the hearing, Stephen Smith, a member of the Selectboard and a defendant in this action, stated that Nugent did not plow the portion of Patterson Road near the Chester town line because the road is too steep, too narrow, and there is no place for plow trucks to turn around.

Plaintiff disagreed with that assessment and asked to present evidence supporting his position. Smith and Plaintiff "agree[d] to conference additional [d]iscovery prior to reconvening of the [h]earing on November 23, 2021." (SAC, Dkt. 32, ¶ 71; FAC, Dkt. 18, ¶ 73.) On November 16, 2021, Plaintiff emailed O'Neil a copy of the engineer's report he obtained for the Chester Property in 1996 and

requested the report be shared with Smith. The Selectboard also requested information from Chester about the Chester Property and Chester's plans for maintaining Smith Road during the upcoming winter. Chester responded to the request in three letters; one from Katherine Warden, then the Administrator for Chester and a defendant in this case; one from the Chester Board of Health, and one from the Chester Building Inspector. Together, the letters stated that Chester had no records demonstrating there was a legally habitable dwelling at the Chester Property and, therefore, would not be providing winter maintenance on the portion of Smith Road running past the Chester Property to the border with Worthington.

The hearing continued during the Selectboard's November 23, 2021 meeting. Plaintiff was not sent copies of the Chester letters or invited to discuss the available evidence with Smith before the meeting. After deliberation, two of the three members of the Selectboard, Smith and Amy Wang, another defendant in this case, voted to close the disputed stretch of Patterson Road running to the Chester border until the following spring. An article about the decision was published in the Country Journal Newspaper and reported that Smith had said: "From Chester town officials, we found that the property [owned by Brooks] has been found by the Board of Health to be non-habitable . . . It was found not to constitute a lawfully occupiable dwelling by the building inspector." (Dec. 2, 2021 Country Journal, SAC, Ex. 11, Dkt. No. 32-11 (first alteration in original).)

Approximately eighteen months later, on April 28, 2023 and May 6, 2023, Plaintiff sent Worthington, and a group of individuals including most of the individual defendants in this action, lengthy letters outlining his intent to assert legal claims against them. The allegations in the letter dated April 28, 2023 described the long-running conflict regarding seasonal road closures and the events leading up to the November 2021 vote to continue the partial, seasonal closure of Patterson Road. (Apr. 28, 2023 Presentment Letter, SAC, Ex. 12, Dkt. No. 32-12.) The letter dated May 6, 2023 primarily addressed (1) insufficient winter maintenance of Lindsey Hill Road that continued through

February 2023, and (2) Plaintiff's complaints and conflicts related to winter conditions on Lindsey Hill Road. None of the dated incidents described in the letter occurred after March 3, 2000. (May 6, 2023 Supp. Presentment Letter, SAC, Ex. 12, Dkt. No. 32-12.)

After Plaintiff sent presentment letters to Defendants, the Worthington Selectboard voted, on November 14, 2023, to close the disputed portion of Patterson Road until the following spring. A year later, on November 19, 2024, the Worthington Selectboard voted to keep Patterson Road open during the winter all the way to the Chester line.

## V.     DISCUSSION

Plaintiff's SAC includes eight counts, five are brought pursuant to federal law and the remaining three assert state law claims. As this court's jurisdiction derives from the federal claims, the court turns to those first. Plaintiff claims Defendants' decision to close a portion of Patterson Road in the winter (1) is actionable under 42 U.S.C. § 1983 because it violated his rights to due process and equal protection under the Fourteenth Amendment (Counts IV and V) and the closure, as well as Nugent's poor maintenance of Lindsey Hill Road, were retaliation against him following an exercise of his First Amendment right to petition (Count VI); (2) involved a civil conspiracy to interfere with Plaintiff's civil rights (Count VII), and (3) deprived him of equal access to public facilities in violation of Title II of the Civil Rights Act, 42 U.S.C. § 2000a (Count VIII).

A.   42 U.S.C. § 1983

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Borrás-Borrero v. Corporácion del Fondo del Seguro del Estado*, 958 F.3d 26, 35 (1st Cir. 2020) (internal quotations omitted). "A claim for relief under section 1983 requires a showing of two elements—first, that the plaintiff was deprived of either a federal constitutional or statutory right, and, second, that the deprivation was carried out by a defendant acting

under color of state law." *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012). Plaintiff invokes his federally protected rights to due process, equal protection, and the right to petition. As Defendants do not contest Plaintiff's assertions that they were "state actors" for purposes of § 1983, the court's assessment focuses on whether Plaintiff has plausibly alleged a deprivation of a constitutional or statutory right.

Claims brought pursuant to § 1983 are subject to the statute of limitation period for personal injury actions in the state where the claim is brought. *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). Under Massachusetts law, "actions . . . to recover for personal injuries . . . shall be commenced only within three years next after the cause of action accrues." Mass. Gen. Laws c. 260, § 2A. "[T]he accrual date for a § 1983 action is simply the date when the potential plaintiff knew or should have known that she was harmed." *Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008). As Plaintiff filed this action on or about January 22, 2024, claims based on injuries Plaintiff incurred prior to January 2021 are time-barred.

       i.    Due Process

The Due Process Clause of the Fourteenth Amendment provides both procedural and substantive protections. *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006). Procedural protections require the government to use fair procedures in dealings with private persons. *Harron v. Town of Franklin*, 660 F.3d 531, 535 (1st Cir. 2011). The substantive component of due process "'safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them.'" *Id.* (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005)). The SAC does not distinguish between the two types of due process violations. After assessing both types of claims, the court concludes Plaintiff's SAC does not plausibly allege a violation of either component of due process.

a. Procedural Due Process

The court evaluates "'procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Harron*, 660 F.3d at 537 (1st Cir. 2011(quoting *González-Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010)). As to the first part of the inquiry, Plaintiff contends Defendants singled him out and denied him winter access to Patterson Road on the same terms provided to individuals who use Fisk Road. However, the Plaintiff has not plausibly alleged that Defendants' actions interfered with any interest Plaintiff actually possessed. "[P]roperty interests are defined by state law." *Id.* Massachusetts law imposes a duty on municipalities to maintain public roads in a safe condition during all seasons, but does not recognize a right of abutters to compel a municipality to maintain a road.[3] *See Fratus v. Town of Harwich*, 175 N.E.3d 401, 404 (Mass. App. Ct. 2021) (citing Mass. Gen. Laws c. 84, § 1). Since Plaintiff lacked an enforceable right to a certain level of winter maintenance on Patterson Road, Defendants' actions and decisions to close Patterson Road for the winter in 2021 and 2023 did not violate Plaintiff's right to procedural due process.

b. Substantive Due Process

"To adequately plead a substantive due process claim, a plaintiff must allege a deprivation of a protected interest in life, liberty, or property." *3137, LLC v. Town of Harwich*, 126 F.4th 1, 11 (1st Cir. 2025) (internal quotations omitted). "Substantive due process protects only those interests that implicate one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty

---

[3] A municipality that fails to maintain and repair public ways is liable to "persons sustaining personal injuries or property damage from defects in the ways" and may also be fined by the Commonwealth "for failure to maintain the road." *Dus v. Town of Hancock*, 95 N.E.3d 300 (Mass. App. Ct. 2017) (unpublished) (citing *Sturdy v. Planning Bd. of Hingham*, 586 N.E.2d 11, 14 (Mass. App. Ct. 1992) and Mass. Gen. Laws c. 84, §§ 15, 22).

nor justice would exist if they were sacrificed.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 880 n.13 (1st Cir. 2010) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). As explained above, state law defines the scope of property interests, and Massachusetts does not grant individuals the right to compel a town to maintain public roads. *Fratus*, 175 N.E.3d at 404. As a result, Plaintiff's right to substantive due process was not violated by the 2021 and 2023 decisions to close a portion of Patterson Road for the winter.

ii.  Equal Protection

"Under the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9 (1st Cir. 2007) A plaintiff can plausibly plead an equal protection claim by alleging facts demonstrating he (1) was selectively treated because of his membership in a particular class or group, or (2) is a "class of one" who was intentionally, and without rational basis, treated differently from others who were similarly situated. *Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 130 (1st Cir. 2023). Plaintiff has not alleged that he is a member of a protected class or group. He also has not alleged that long-standing plowing policies for Fisk Road were changed in response to a request from a similarly situated individual or that long standing plowing policies for Patterson Road were changed to punish him. *See Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (dismissing equal protection claims based on disparate treatment of landowner by municipal officials where the plaintiff failed to allege sufficient facts to demonstrate owners of nearby parcels were similarly situated).  Nor has he alleged enough about the two roads to support an inference that Defendants lacked a rational basis for adopting different winter maintenance policies for the two roads.

iii.  First Amendment Retaliation

Plaintiff also alleged Defendants took actions in retaliation against him after he exercised his First Amendment right to petition a government entity. Most of the actions described by Plaintiff

occurred more than three years before he filed this action on or about January 22, 2024 and retaliation claims based on those events are dismissed as untimely. Plaintiff has identified two retaliatory actions that are not time-barred: the alleged fabrication of documents signed by Warden and other Chester officials in November 2021 and an assault on Plaintiff in October 2023. As to the letters, Warden is the only defendant who allegedly wrote one of the letters, and, although Plaintiff claims the letters were "fabricated," he has not alleged any facts that plausibly support that conclusory assertion. Without more, no reasonable jury could conclude Warden fabricated one or more of the letters to retaliate against Plaintiff because he had complained about winter road maintenance issues, or that any of the other defendants played any role in the creation of the letters. Defendants are also entitled to dismissal of the retaliation claim to the extent it is based on a 2023 assault on Plaintiff by an individual who is not named as a defendant and whose only alleged connection any of the defendants is his friendship with Nugent.

B. 42 U.S.C. § 1985

"To plead an actionable claim under [42 U.S.C. § 1985(3)], [a plaintiff] must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)). "Pleading a section 1985(3) conspiracy 'requires at least minimum factual support of the existence of a conspiracy.'" *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Francis-Sobel v. Univ. of Me.*, 597 F.2d 15, 17 (1st Cir. 1979)). "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Alston*, 988 F.3d at 578. In his SAC, Plaintiff alleged specific actions taken by each of the individual defendants and explained how the actions

13

combined to bring about a particular result, but when his conclusory allegations are stripped away, there are no facts from which an agreement can be reasonably inferred. *Id.* (finding plaintiff who "d[id] not allege any contact or conversation" between two town officials who both circulated a specific letter failed to do more than establish that it was "within the realm of possibility that [the two officials] collaborated"). While Plaintiff "is entitled to have reasonable inferences drawn in his favor, . . . he is not entitled to the benefit of speculation unanchored to sufficiently supportive facts." *Id.*

C.   42 U.S.C. § 2000a

Plaintiff's factual allegations are also insufficient to state a claim for discrimination in a place of public accommodation. Section 2000a prohibits discrimination on the basis of race, color, religion, or national origin in a defined set of places of public accommodation. 42 U.S.C. § 2000a(a). Regardless of whether any of the defendants intended their actions to negatively impact Plaintiff, he has not alleged any facts from which the court can plausibly infer Defendants' actions were motivated by his race, color, religion, or national origin. Additionally, Patterson Road is not a physical premises where members of the public may go to procure "goods, services, facilities, privileges, advantages, and accommodations" and, therefore, is not a place of public accommodation as that term is defined in the statute. *Id.*

D.   State Claims

"[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" *Figueroa v. Alejandro,* 597 F.3d 423, 431 n.10 (1st Cir.2010) (quoting 28 U.S.C. § 1367(c)(3)). Having found all of Plaintiff's federal claims fail to state a claim upon which relief can be granted, the court exercises its discretion and declines to exercise its supplemental jurisdiction over the remaining state law claims. *See Meuse v. Pane,* 322 F.Supp.2d 36, 39 (D.Mass. 2004) ("Having dismissed [the plaintiff's] federal claims against [the defendant], this Court declines to exercise supplemental jurisdiction over [the plaintiff's] state law

claims against [the defendant]."); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

## VI.    CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. No. 32) is DENIED and Defendant's Motion to Dismiss (Dkt. No. 24) is Granted as to Plaintiff's federal claims, asserted in Counts IV through VIII, which are dismissed, due to their failure to state a claim upon which relief can be granted. The court also exercises its discretion to remand Plaintiff's remaining state-law claims (Counts I through III) to state court. The clerk should enter judgment for Defendants as to Plaintiff's federal claims and remand the remaining claims to state court. The case may then be closed.

It is so Ordered.


 /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge